UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WAWGD, INC. dba FORESIGHT SPORTS,<br><br>         Plaintiff,<br><br>v.<br><br>SENTINEL INSURANCE COMPANY,<br><br>         Defendant. | Case No.: 16-cv-2917-CAB-BGS<br><br>**ORDER RE CROSS-MOTIONS FOR SUMMARY JUDGMENT**<br><br>[Doc. Nos. 21, 22] |

This insurance coverage and bad faith case is before the Court on the parties' cross-motions for summary judgment or partial summary judgment concerning Defendant Sentinel Insurance Company's ("Sentinel") duty to defend and indemnify Plaintiff WAWGD, Inc. d/b/a Foresight Sports ("Foresight") in connection with a third party complaint seeking defense and indemnification from Foresight by the defendants in a patent infringement lawsuit filed against them. The motions have been fully briefed, and the Court deems the motions suitable submission without oral argument. For the reasons set forth below, the Court **GRANTS** Sentinel's motion and **DENIES** Foresight's motion.

## I. Background

### A. The Underlying Lawsuit

In 2015, Max Out Golf, LLC ("Max Out") filed a lawsuit in federal court in Texas against Roger Dunn, Inc., and GWNE, Inc. (together, "Dunn/GWNE") alleging that Dunn/GWNE had infringed two of Max Out's patents with United States patent numbers 8,696,497 (the "'497 Patent") and 7,967,695 (the "'695 Patent," and together with the '497 Patent, the "Patents"). Max Out's amended complaint alleged that Dunn/GWNE directly infringed both Patents by "making, using, offering for sale, and/or selling a golf equipment fitting system that uses advanced technology to objectively identify the optimum equipment for the golfer and correct swing flaws so that the golfer can achieve optimum performance on the golf course." [Doc. No. 21-2 at ¶¶ 22, 34.]

In addition, Max Out alleged that Dunn/GWNE "are contributorily infringing, will induce, are inducing and have induced infringement of one or more claims of '497 Patent by offering to sell and selling golf club fitting services using GC2 and Foresight Sports' FSX FitModule, including current and preceding versions, to customers, buyers, sellers, users and others who directly infringe the '497 Patent." [*Id.* at ¶ 23.] Similarly, Max Out alleged that Dunn/GWNE "are contributorily infringing, will induce, are inducing and have induced infringement of one or more claims of '695 Patent by offering to sell and selling golf club fitting services using GC2, Foresight launch monitor, FSX FitModule, Foresight Performance Simulation, and/or Foresight Game Changer, including current and preceding versions, to customers, buyers, sellers, users and others who directly infringe the '695 Patent." [*Id.* at ¶ 35.] Max Out alleged that Dunn/GWNE's "infringing activity has directly and proximately caused damage to Plaintiff Max Out Golf, including loss of profits from sales and/or licensing revenues it would have made but for the infringements." [*Id.* at ¶¶ 27, 39.]

Dunn/GWNE filed a third-party complaint ("TPC") against Foresight.[1] The TPC alleged that Dunn/GWNE were bringing it "based on Foresight's warranty of non-infringement and duty to indemnify [Dunn/GWNE] for Max Out Golf's infringement claims under the applicable Commercial Code provisions." [Doc. No. 23-2 at 15, ¶ 2.] The TPC also alleged that:

- Dunn/GWNE's indemnification claims "arise out of Max Out Golf's patent infringement allegations against [Dunn/GWNE] in this case." [*Id.* at 16, ¶ 7.]
- "Foresight warranted to [Dunn/GWNE] that its GC2 launch monitors and other products were free of any rightful claim of infringement." [*Id.* at 19 ¶ 26.]
- "[Dunn/GWNE] are making Foresight a party to this action because of its sales of allegedly infringing products to [Dunn/GWNE] and its ongoing support of those products, which form the basis of Max Out Golf's claims of infringement of the '497 patent." [*Id.* at 19 ¶ 30.]
- "Foresight is made party to this suit because of its sales of allegedly infringing products to GWNE and its ongoing support of those products, which form the basis of Max Out Golf's claims of infringement of the '695 patent." [*Id.* at 20 ¶ 35.]

In the prayer for relief, the TPC asked for a "judgment that Foresight must indemnify [Dunn/GWNE] for any and all costs, losses, liabilities, expenses (including attorneys' fees), judgments, and amounts actually and reasonably incurred based on Max Out Golf's

---

[1] The original third-party complaint actually listed "Foresight Sports, Inc." as the third-party defendant. [Doc. No. 23-2 at 14.] An amended third-party complaint was later filed that was substantively identical aside from identifying WAWGD, Inc. d/b/a Foresight Sports as the third-party defendant. [Doc. No. 22-7.] In its opposition to Foresight's motion, Sentinel states that Foresight never tendered this amended third-party complaint and that Foresight's motion was the first time Sentinel had ever received a copy of the amended third-party complaint. [Doc. No. 23 at 10.] This issue is immaterial because the substantive allegations in both third-party complaints are identical and there is no coverage regardless of whether the amended third-party complaint was properly tendered.

patent infringement claims," and for an award of damages equal to such amounts. [*Id.* at 21.]

### B. The Policy

Foresight filed this insurance coverage and bad faith lawsuit contending that Sentinel has a duty to defend and indemnify Foresight in connection with Dunn/GWNE's TPC pursuant to a Business Owners Policy (the "Policy") Sentinel issued to Foresight. The relevant insuring agreement states:

> a. [Sentinel] will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies. [Sentinel] will have the right and duty to defend the insured against any "suit" seeking those damages. . . .
>
> b. This insurance applies:
>   (1) To "bodily injury" and "property damage" only if:
>     (a) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";
>     (b) The "bodily injury" or "property damage" occurs during the policy period . . . .

[Doc. No. 21-4 at 69.] The Policy also contains a breach of contract exclusion that excludes coverage for property damage "for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement." [*Id.* at 71.] However, this contract exclusion "does not apply to liability for damages because of . . . 'property damage' . . . that the insured would have in the absence of the contract or agreement." [*Id.*] The Policy also contains a professional services exclusion, but a separate endorsement states that the PSE "does not apply to . . . 'property damage' . . . arising out of the insured's 'technology services.'" [*Id.* at 32, 74.]

The Policy defines "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." [*Id.* at 90.] "Property damage" is defined as:

a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or
   b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

[*Id.* at 91.]

## II. Legal Standard on Summary Judgment

The familiar summary judgment standard applies here. A party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). To avoid summary judgment, disputes must be both 1) material, meaning concerning facts that are relevant and necessary and that might affect the outcome of the action under governing law, and 2) genuine, meaning the evidence must be such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Cline v. Indus. Maint. Eng'g & Contracting Co.*, 200 F.3d 1223, 1229 (9th Cir. 2000) (citing *Anderson*, 477 U.S. at 248).

The initial burden of establishing the absence of a genuine issue of material fact falls on the moving party. *See Celotex Corp.*, 477 U.S. at 322-323. If the moving party can demonstrate that its opponent has not made a sufficient showing on an essential element of his case, the burden shifts to the opposing party to set forth facts showing that a genuine issue of disputed fact remains. *Id.* at 324. When ruling on a summary judgment motion, the court must view all inferences drawn from the underlying facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## III. California Law On the Interpretation of Insurance Policies

Neither party disputes that California law governs this insurance coverage dispute. *See, e.g., Intri-Plex Techs., Inc. v. Crest Group, Inc.*, 499 F.3d 1048, 1052 (9th Cir. 2007)

(stating that law of the forum state applies in diversity actions). Under California law, the "interpretation of an insurance policy is a question of law" to be answered by the court. *Waller v. Truck Ins. Exch., Inc.*, 11 Cal. 4th 1, 18 (1995); *see also LaGrassa v. Burlington Ins. Co.*, 11-CV-2730-JAM-EFB, 2012 WL 5932959, at *3 (E.D. Cal. Nov. 27, 2012) ("[I]nterpretation of insurance contracts raise questions of law and thus are particularly amenable to summary judgment.") (citation omitted). The "goal in construing insurance contracts, as with contracts generally, is to give effect to the parties' mutual intentions." *Minkler v. Safeco Inc. Co.*, 49 Cal. 4th 315, 321 (2010) (quoting *Bank of the West v. Superior Court*, 2 Cal. 4th 1254, 1264 (1992)).

To accomplish this goal, the court must "look first to the language of the contract in order to ascertain its plain meaning or the meaning a layperson would ordinarily attach to it." *Waller*, 11 Cal. 4th at 18; *see also Cont'l Cas. Co. v. City of Richmond*, 763 F.2d 1076, 1080 (9th Cir. 1985) ("The best evidence of the intent of the parties is the policy language."). "The clear and explicit meaning of [the policy] provisions, interpreted in their ordinary and popular sense, unless used by the parties in a technical sense or a special meaning is given to them by usage, controls judicial interpretation." *Waller*, 11 Cal. 4th at 18 (internal quotation marks and citations omitted); *see also Minkler*, 49 Cal. 4th at 321 ("If contractual language is clear and explicit, it governs.") (citation omitted).

However, "[i]f the terms are ambiguous [i.e., susceptible of more than one reasonable interpretation], [courts] interpret them to protect the objectively reasonable expectations of the insured." *Minkler*, 49 Cal. 4th at 321 (citations omitted); *Smith Kandal Real Estate v. Cont'l Cas. Co.*, 67 Cal. App. 4th 406, 415 (Cal. Ct. App. 1998) ("If the policy is ambiguous because it is reasonably susceptible to more than one interpretation, the ambiguity is construed in favor of coverage."). That being said, "[c]ourts will not strain to create an ambiguity where none exists." *Waller*, 11 Cal. 4th at 18-19. "[I]f the meaning a layperson would ascribe to contract language is not ambiguous, we apply that meaning." *AIU Ins. Co. v. Superior Court*, 51 Cal. 3d 807, 822 (1990).

There are two parts to any coverage analysis. First, "[b]efore even considering exclusions, a court must examine the coverage provisions to determine whether a claim falls within the policy terms." *Waller*, 11 Cal. 4th at 16 (internal brackets and quotation marks omitted). The insured bears the burden of proof in this regard, but the insuring agreement language in a policy is interpreted broadly in favor of coverage. *See AIU Ins.*, 51 Cal. 3d at 822 ("[W]e generally interpret coverage clauses of insurance policies broadly, protecting the objectively reasonable expectations of the insured."). If the insured proves that the claim falls within the policy terms, the burden then shifts to the insurer to prove that an exclusion applies. *Waller*, 11 Cal. 4th at 16; *see also Raychem Corp. v. Fed. Ins. Co.*, 853 F. Supp. 1170, 1175 (N.D. Cal. 1994) ("[T]he insurer bears the burden at trial of proving that a statutory or policy exclusion or limitation applies."). Exclusions "are interpreted narrowly against the insurer." *Minkler*, 49 Cal. 4th at 322.

The instant dispute concerns Sentinel's duty to defend and duty to indemnify. However, because the duty to defend "arises whenever a claim may potentially lead to indemnity," (*Pension Trust Fund for Operating Engineers v. Fed. Ins. Co.*, 307 F.3d 944, 949 (9th Cir. 2002), if there is no duty to defend, then there is also no duty to indemnify. *Certain Underwriters at Lloyd's of London v. Superior Court*, 24 Cal. 4th 945, 961 (2001) ("It is well settled that because the duty to defend is broader than the duty to indemnify, a determination that there is no duty to defend automatically means that there is no duty to indemnify.") (internal ellipses, quotation marks and citation omitted). "In resolving the question of whether a duty to defend arises under a policy, the insurer has a higher burden than the insured. '[T]he insured need only show that the underlying claim *may* fall within policy coverage; the insurer must prove it *cannot*.'" *Pension Trust Fund*, 307 F.3d at 949 (*emphasis* in original) (quoting *Montrose Chem. Corp. v. Superior Court*, 6 Cal. 4th 287, 300 (1993)).

### IV.  Discussion

In light of the foregoing, to establish the existence of a duty to defend under the Policy, Foresight has the burden of establishing the TPC alleges facts that potentially could

lead to a covered claim. Foresight does not satisfy this burden because the allegations in the TPC do not lead to any possible claim that would fall within the insuring agreement of the Policy.

### A. Property Damage

Foresight argues that in the TPC, Dunn/GWNE allege property damage arising out of an occurrence during the Policy period and therefore falls within the insuring language of the Policy. The allegations in the TPC do not support this argument. The TPC does not allege that Dunn/GWNE suffered any property damage. The TPC simply asserts contractual indemnity claims, and the only damage it alleges is whatever Dunn/GWNE is ordered to pay Max Out on its patent infringement claims, along with its other costs and fees associated with Max Out's lawsuit. There is no allegation in the TPC that Foresight's alleged express or implied agreement to indemnify Dunn/GWNE for patent infringement claims actually caused any damage to, or loss of use of, the Foresight products Dunn/GWNE had purchased. Rather, Dunn/GWNE seeks damages from Foresight for *economic harm* due to Max Out's patent infringement claims and Foresight's failure to indemnify Dunn/GWNE therefor. *See generally Golden Eagle Ins. Corp. v. Cen-Fed, Ltd.*, 138 Cal. App. 4th 976, 987 (Cal. Ct. App. 2007) (holding that because underlying claims were for economic harm due to a breach of contractual obligations, there was no property damage or occurrence). These economic injuries do no constitute property damage triggering coverage under the Policy.

Foresight's argument that "[i]t is readily inferable from the [TPC] that if Dunn/GWNE's breach of implied warranty claims were successful, Dunn/GWNE would be subject to a potential 'loss of use' of the products it purchased from Foresight,"[2] and

---

[2] As written, this argument is perplexing as it is unclear how Dunn/GWNE would be subject to a potential loss of use of the Foresight products if *Dunn/GWNE's* breach of implied warranty claim were successful. Putting aside that there is no breach of implied warranty claim in either Max Out's complaint or the TPC, the Court assumes that Foresight meant that Dunn/GWNE would be subject to a potential loss of use of the Foresight products if *Max Out's* patent infringement claims against Dunn/GWNE were successful.

that the TPC "could have been amended to expressly state what was already clearly implied" do not warrant a different outcome. [Doc. No. 26 at 16.] The TPC does not allege loss of use of the Foresight products or seek any damages for any loss of use of the Foresight products (or any other property for that matter); it only seeks defense and indemnification from Foresight. Foresight "is not entitled to justify an argument for coverage based on speculation about claims that have not been alleged or asserted." *Id.* at 988. For a duty to defend to exist, the actual allegations in the TPC itself must actually create the potential for coverage. Otherwise, every complaint ever filed would create a duty to defend because it is always possible that the complaint could be amended to create the potential for coverage. *See generally Hurley Constr. Co. v. State Farm Fire & Cas. Co.*, 10 Cal. App. 4th 533, 538 (1992). ("[T]he insured may not speculate about unpled third party claims to manufacture coverage.").

### B. Occurrence

Moreover, even if the injury for which Dunn/GWNE sought recovery from Foresight in the TPC constituted "property damage," such property damage was not caused by an "occurrence." The Policy defines occurrence as an accident. "An accident, however, is never present when the insured performs a deliberate act unless some additional, unexpected, independent, and unforeseen happening occurs that produces the damage. . . . Moreover, where the insured intended all of the acts that resulted in the victim's injury, the event may not be deemed an 'accident' merely because the insured did not intend to cause injury." *Merced Mut. Ins. Co. v. Mendez*, 213 Cal. App. 3d 41, 50 (Cal. Ct. App. 1989).[3] Here, any injury alleged by Dunn/GWNE in the TPC was caused by Foresight's manufacture and sale of products to Dunn/GWNE and alleged breach of its warranty to

---

[3] *See also Shell Oil Co. v. Winterthur Swiss Ins. Co.*, 12 Cal. App. 4th 715, 750 (Cal. Ct. App. 1993) (noting that when "policies . . . define an 'occurrence' as 'an accident, including ...,' cover property damage 'caused by' an 'occurrence'. . . an 'occurrence' is a causal event, defined as an "accident." In this context, an 'accident' cannot mean unintended damage because the causal event also would be the result. Logically, a consequence cannot cause itself.")

9

Dunn/GWNE that the products Foresight sold do not infringe any patents and alleged agreement to indemnify Dunn/GWNE for infringement claims. [Doc. No. 23-2 at 15 ¶ 2, 16 ¶ 7, 19, ¶ 26.] Foresight's manufacture and sale of the products to Dunn/GWNE, along with its warranty that they do not infringe and indemnification agreement, were deliberate and intentional acts, and there was no "additional, unexpected, independent, and unforeseen happenings" (*Mendez*, 213 Cal. App. 3d at 50) that caused the infringement alleged by Max Out or the indemnity obligation to Dunn/GWNE. That Foresight did not intend to infringe the Patents or intend to actually have to indemnify Dunn/GWNE for Max Out's infringement claims does not mean that Dunn/GWNE's injury was caused by an accident. *Cf. Alco Iron & Metal Co. v. Am. Int'l Specialty Lines Ins. Co.*, 911 F. Supp. 2d 844, 849 (N.D. Cal. 2012) ("Courts have routinely rejected the argument that a lack of 'intent to harm' can transform otherwise volitional acts into accidents, finding that the term 'accident' in this context refers to the insured's intent to commit the act giving rise to liability, as opposed to his or her intent to cause the consequences of that act.") (internal quotation marks and citation omitted). In sum, "[t]he conduct giving rise to the underlying action against [Foresight] is not an 'accident' and thus not an 'occurrence' within the coverage provision. Because there is no potential basis for coverage, there is no duty to defend." *Mendez*, 213 Cal. App. 3d at 53.

### C. Intellectual Property Exclusion

Having found that there is no potential for coverage based on the insuring agreement, the Court need not consider any policy exclusions. *Stanford Ranch, Inc. v. Md. Cas. Co.*, 89 F.3d 618, 627 (9th Cir. 1996) ("If coverage does not exist under the insuring agreement, the inquiry is at an end."). However, even if the TPC contained allegations creating the potential for coverage with respect to the insuring agreement, Sentinel still would have no duty to defend because the Policy contains an intellectual property exclusion that excludes coverage for personal and advertising injury:

(a) Arising out of any actual or alleged infringement or violation of any intellectual property right, such as . . . patent . . .; or

(b) *Any injury or damage* alleged in any claim or 'suit' that also alleges an infringement or violation of any intellectual property right . . ., regardless of whether this insurance would otherwise apply.

[Doc. No. 21-4 at 134 (*emphasis* added.]

The TPC was filed in a lawsuit that also includes allegations of patent infringement implicating subpart (b) of this exclusion, which, contrary to Foresight's argument, applies to *any injury or damage* alleged in a lawsuit including a patent infringement claim, and is therefore not limited to personal and advertising injury claims. The intellectual property exclusion "establishes as a matter of law that [Foresight] is not entitled to a defense in [connection with the TPC]. The policy language is clear and explicit and is, therefore, dispositive." *Molecular Bioproducts, Inc. v. St. Paul Mercury Ins. Co.*, No. 03-0046-IEG(LSP), 2003 WL 23198852, at *5 (S.D. Cal. July 9, 2003) (holding no duty to defend in patent infringement suit based on similar exclusion language). More specifically, this exclusion "clearly and unambiguously communicates that (1) personal and advertising injury arising out of any actual or alleged infringement or violation of any intellectual property right is excluded from the policy; (2) a [patent] is considered intellectual property; and (3) any injury or damage alleged in a suit that also alleges an infringement or violation of an intellectual property right is also excluded. [] The exclusion is valid and enforceable." *Pinnacle Brokers Ins. Sols. LLC v. Sentinel Ins. Co., Ltd.*, No. 15-CV-02976-JST, 2015 WL 5159532, at *3 (N.D. Cal. Sept. 2, 2015) (holding no duty to defend lawsuit asserting fifteen claims based on identical exclusion language because one of the fifteen claims was for misappropriation of trade secrets). Accordingly, the intellectual property exclusion is another reason why Sentinel did not have a duty to defend Foresight.[4]

---

[4] Tellingly, despite the fact that the coverage language in the Policy is fairly standard and patent infringement lawsuits are plentiful, Foresight does not cite to even one case where a court found that a general liability policy imposed a duty to defend a patent infringement lawsuit or a third party's claim for indemnification related to a patent infringement lawsuit under the property damage insuring agreement of a general liability policy. Indeed, in many cases considering coverage for patent infringement claims under a general liability policy, the insured did not even argue for coverage under the property damage provision of the insuring agreement. *See, e.g., Hyundai Motor Am. v. Nat'l Union Fire Ins. Co. of*

### D. Technology Services Endorsement

Because the TPC does not allege facts that create a potential for coverage under the insuring agreements, Foresight's argument that the Policy provides coverage pursuant to the technology services endorsement is incorrect. The language on which Foresight relies—that the "Professional Services" exclusion does not apply to property damage arising out of Foresight's "technology services," is simply an exception to the professional services exclusion. "Ordinarily, an exception to a policy exclusion does not create coverage not otherwise available under the coverage clause." *Hurley Constr. Co.*, 10 Cal. App. 4th at 540. As the Ninth Circuit explained:

> While an insurer's duty to defend is broad in scope, *Montrose Chem. Corp. v. Superior Court*, 6 Cal.4th 287, 295 (1993), proper coverage analysis begins by considering whether the policy's insuring agreements create coverage for the disputed claim. *See Stanford Ranch, Inc. v. Md. Cas. Co.*, 89 F.3d 618, 627 (9th Cir. 1996). If coverage exists, then the court considers whether any exclusions apply. If coverage does not exist, the inquiry ends. The exclusions are no longer part of the analysis because "they cannot expand the basic coverage granted in the insuring agreement." *Id*.
>
> The rule is no different for exceptions to exclusions. A "carve back" within an exclusionary provision merely restores already-existing coverage. "[T]here is no cure for a lack of coverage under the insuring clause. Even if the effect of an exception is to render a particular exclusion inoperative, the insured must still prove the loss is covered." *Old Republic Ins. Co. v. Superior Court*, 66 Cal. App. 4th 128, 145 (Cal. Ct. App. 1998).

*Sony Computer Entm't Am. Inc. v. Am. Home Assur. Co.*, 532 F.3d 1007, 1017 (9th Cir. 2008). Accordingly, because Foresight has not established any potential for coverage under the insuring agreement in the Policy, the technology services endorsement's carve back of the professional services agreement is immaterial.

---

*Pittsburgh, PA,* 600 F.3d 1092, 1098 (9th Cir. 2010) (holding that patent infringement suit created duty to defend for an "advertising injury"); *Molecular Bioproducts, Inc.*, 2003 WL 23198852, at *5 (insured sought coverage based on personal and advertising injury insuring agreement).

## V. Conclusion

Because the TPC did not allege any facts that created the potential for a covered claim, Sentinel had no duty to defend Foresight from Dunn/GWNE's claims or to indemnify Foresight for its settlement of those claims. In addition, because Sentinel did not breach any coverage obligation, it did not breach the implied covenant of good faith and fair dealing. *Waller*, 11 Cal. 4th at 36 ("It is clear that if there is no potential for coverage and, hence, no duty to defend under the terms of the policy, there can be no action for breach of the implied covenant of good faith and fair dealing because the covenant is based on the contractual relationship between the insured and the insurer."). Accordingly, it is hereby **ORDERED** that Sentinel's motion for summary is **GRANTED** and Foresight's motion for partial summary judgment is **DENIED**. The Clerk of Court is instructed to **CLOSE** this case.

It is **SO ORDERED**.

Dated: September 29, 2017

_____
Hon. Cathy Ann Bencivengo
United States District Judge